1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| MANUEL AVILA et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 2:09-cv-00682-RCJ-GWF |
| vs. | ) | |
| | ) | |
| CENTURY NATIONAL INSURANCE CO., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case arises out of a contractual dispute between an alleged insured and his alleged insurer.  Plaintiffs Fernando Avila and Rosario Reyes, co-administrators of decedent and former plaintiff Manuel Avila's ("Avila") estate, claim that Defendant Century National Insurance Co. ("Century National") breached its duty to defend and indemnify Avila for personal liability arising out of a gunshot accident at the alleged insured property.  Defendant argues that Avila does not qualify as an insured under the disputed policy.  Pending before the Court are Defendant's Objections (ECF No. 98) to the magistrate judge's order denying Rule 37 sanctions against Plaintiffs and Defendant's Motion to Limit Damages (ECF No. 100).  For the reasons given herein, the Court denies the motions.

I.    **FACTS AND PROCEDURAL HISTORY**

Fernando Avila and his siblings bought a home for their parents, Manuel and Maria.  In 1997, Fernando obtained the loan to buy the home, located at 1618 Buffalo Trail Drive in Henderson, Nevada (the "Residence").  In connection with the home purchase, Fernando obtained a homeowner's policy (the "Policy") through Century National.  Fernando arranged the

1    Policy through his mortgage company, Washington Mutual ("WaMu").  He sent monthly

2    payments to WaMu, who in turn paid the insurance and taxes.  According to Fernando, he never

3    had any conversations directly with the insurance company.

4            The Policy provides coverage to the "insured," defined as "you and residents of your

5    household who are (a) [y]our relatives or (b) [o]ther persons under the age of 21 and in the care

6    of any person named above."  It defines "you" as the "named Insured," as shown in the

7    Declarations, and "the spouse if a resident of the same household."  The Declaration Page shows

8    the named insureds to be Fernando and Darlene Avila, who at the time were husband and wife.

9    The Policy covers the "insured" in connection with the "insured location," defined as the

10   "residence premises," which is further defined as "(a) [t]he one family dwelling, other structures,

11   and grounds"; or (b) "[t]hat part of any other building, where you reside and which is shown as

12   the residence premises in the Declarations."  The Declaration Page shows the residence premises

13   to be 1618 Buffalo Trail Drive in Henderson, Nevada.

14           Under the Policy's coverage for personal liability, it provides that "[i]f a claim is made or

15   a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage'

16   caused by an 'occurrence' to which this coverage applies," Century National will "[p]ay up to

17   [its] limit of liability for the damages for which the 'insured' is legally liable" and "[p]rovide a

18   defense at [its] expense by counsel of our choice, even if the suit is groundless, false or

19   fraudulent."  The Policy defines "bodily injury" as "bodily harm, sickness or disease, including

20   required care, loss of services and death that results."  The Policy defines "occurrence" as "an

21   accident, including continuous or repeated exposure to substantially the same general harmful

22   conditions, which results, during the policy period, in (a) 'bodily injury'; or (b) 'property

23   damage.'"  The Policy states that the personal liability coverage does not apply to "bodily

24   injury . . . arising out of a premises: (1) Owned by an 'insured'; (2) Rented to an 'insured'; or (3)

25                                                Page 2 of  7

1   Rented to another by an 'insured'; that is not an 'insured location.'"

2       All these contractual terms and definitions came to a head as a result of an incident that

3   occurred on August 18, 2005. On that day, Dora Rodriguez was providing household services at

4   the Residence, and Manuel Avila accidentally shot her while cleaning his gun. Rodriguez sued

5   Avila for her injuries and secured a default judgment for $1,546,418.47. Avila never appeared in

6   that action and expended no funds to defend it. Century National refused to defend Avila or

7   cover him for his personal liability arising from the gunshot accident, because its investigation

8   into the claim revealed that Fernando Avila, the named insured, did not reside at the Residence,

9   but in California. In his deposition, Fernando Avila confirmed that he had lived in California for

10  approximately thirty years and that he never intended to reside primarily at the Residence. From

11  the outset, he intended to have only his parents live in the Residence. However, he paid the

12  mortgage, property taxes, insurance, and other expenses associated with the home.

13      Because of Century National's refusal to defend Avila in the lawsuit against him, and

14  because of its failure to indemnify him for the resulting judgment rendered against him, Avila

15  filed this lawsuit in state court against Century National. Fernando Avila and Rosario Reyes, the

16  co-administrators of the Avila's estate, have substituted themselves as Plaintiffs. The estate is

17  insolvent, even before considering Rodriguez's judgment against it, and Fernando Avila and

18  Rosario Reyes do not allege to be personally or otherwise liable to satisfy Rodriguez's judgment.

19  The Amended Complaint ("AC") includes three causes of action: (1) Breach of Contract; (2)

20  Breach of the Covenant of Good Faith and Fair Dealing; and (3) Unfair Claims Practices. (*See*

21  Compl. 9–10, ECF No. 1). Century National removed the lawsuit to this Court on the basis of

22  diversity jurisdiction.

23      On September 19, 2009, the Court denied cross motions for summary judgment, ruling

24  that it was a question for the jury whether Avila was a "household resident" under the Policy, and

25                          Page 3 of 7

1   whether the Residence was Fernando Avila's "residence" under the Policy.  On February 10,

2   2010, the Court granted Defendant's motion for partial summary judgment as against the bad

3   faith claim and denied Plaintiffs' counter-motion for summary judgment.  Defendant argued that

4   because there was a genuine issue of material fact as to whether it was liable under the Policy,

5   Defendant could not possibly be liable for bad faith in denying liability under the "directed

6   verdict rule" that applies in California.  The Court noted that Nevada had rejected the directed

7   verdict rule, but that in this case Defendant was entitled to summary judgment on the bad faith

8   claim because although emotional harm Avila suffered before his death was recoverable in a

9   survival action under Nevada statute, the only evidence on the issue—the deposition of Fernando

10  Avila—indicated that Avila's alleged emotional distress was not caused by Century National's

11  failure to defend or indemnify, but by the shooting incident itself.  The Court also agreed with

12  Defendant that the only other potential source of damages was debt of Avila's estate due to

13  Rodruiguez's judgment against it, but that Avila's estate was insolvent even without considering

14  that judgment.  In other words, there was no genuine issue of material fact that any tortious bad

15  faith on the part of Defendant had resulted in any damages to Avila.  On May 24, 2010, the Court

16  granted Defendant's motion for summary judgment as against the breach of contract claim based

17  upon the same arguments of lack of damages.  At oral argument, Plaintiffs also admitted that

18  Avila had expended no funds on his defense, that his heirs were not liable to pay Rodriguez's

19  judgment against Avila's estate, and that the estate was insolvent even before Rodriguez's

20  judgment was considered.

21          The Court of appeals reversed, ruling that the estate was entitled to performance under the

22  contract up to $135,000, reflecting the amount remaining on the Policy minus the amount the

23  insurer had paid Rodriguez, and that—although it cited no evidence in the record supporting that

24  Defendant's conduct caused any emotional harm to Avila—the bad faith claim should also be

25                                          Page 4 of  7

1  tried, but that Plaintiff would of course have to prove damages.

2      Defendant has filed two motions.  First, Defendant asks the Court to reverse the

3  magistrate judge's denial of its Rule 37 sanctions motion based upon Plaintiffs' alleged failure to

4  provide an adequately prepared witness at a deposition (Fernando Avila).  Second, Defendant

5  asks the Court to exclude from trial any evidence that could result in an alleged double recovery.

6  **II.  LEGAL STANDARDS**

7          When a pretrial matter not dispositive of a party's claim or defense is referred
           to a magistrate judge to hear and decide, the magistrate judge must promptly conduct
8          the required proceedings and, when appropriate, issue a written order stating the
           decision.  A party may serve and file objections to the order within 14 days after
9          being served with a copy.  A party may not assign as error a defect in the order not
           timely objected to.  The district judge in the case must consider timely objections and
10         modify or set aside any part of the order that is clearly erroneous or is contrary to law.

11 Fed. R. Civ. P. 72(a).

12 **III.  ANALYSIS**

13     The Court will not set aside or alter the magistrate judge's ruling.  First, the motion is

14 untimely.  The magistrate judge's order was entered into the electronic docket on December 19,

15 2012, and Defendant filed the present motion fifteen days later on January 3, 2013.  January 2,

16 2013 was not a weekend or holiday.  Plaintiff appears to have served the motion on January 2,

17 2013, but the motion must be served and filed within fourteen days.  In any case, the motion is

18 without merit.  Defendant argued that Fernando Avila was not adequately prepared for his

19 deposition because he did not provide any evidence of Avila's emotional distress having been

20 caused by Defendant.  The magistrate judge rejected this argument, ruling that the Court of

21 Appeals has held that the testimony was sufficient to create a triable issue of fact on Defendant's

22 causation of emotional harm.  Defendant argues that the magistrate judge therefore applied an

23 incorrect legal standard because its denial of sanctions was based upon the Court of Appeals'

24 assessment under the summary judgment standard, not under the Rule 30 standard for a

25              Page 5 of  7

1  sufficiently prepared witness.

2    The Court "disagrees with everybody" but will not set aside or alter the magistrate

3  judge's order.  First, although the magistrate judge reached the proper result, the Court

4  respectfully disagrees that any court's assessment of the summary judgment issue is relevant to a

5  deponent's preparedness under the discovery rules, which is an external procedural matter not

6  relevant to the internal merits questions on summary judgment.  Second, the Court disagrees with

7  Defendant that Fernando Avila was not adequately prepared for the deposition.  He answered the

8  relevant questions, i.e., that the emotional distress was caused by Avila's accidental shooting of

9  Rodriguez, not by Century National's actions.  In fact, it was because his answers on these

10  questions made the issue so clear that the Court granted summary judgment to Defendant.  The

11  fact that a deponent's truthful answers harm his own cause does not mean that he was not

12  prepared to answer the questions.  If anything, such a deponent should be praised for his candor.

13    Next, Defendant asks the Court to exclude evidence of Rodriguez's judgment against the

14  estate as damages under any cause of action, because neither Avila nor his estate ever paid any

15  portion of it and the estate is insolvent.  Although the Court agrees with Defendant that there is

16  no question of damages, the Court of Appeals was clear that the damages question should be

17  resolved at trial.  Defendant may argue at trial that none were suffered.  The Court rejects

18  Defendant's argument that Century National's settlement with Rodruiguez has any effect upon

19  any damages that Century National may have caused Avila through its alleged bad faith, or upon

20  any amounts owed to Avila contractually.  Nor is there any question of double recovery.  It

21  appears undisputed that Century National paid Rodruiguez $165,000 of Avila's $300,000 policy

22  limits to settle Rodriguez's direct claim against it.  Plaintiffs affirm that they seek only the

23  remaining $135,000 as contractual damages.

24  ///

25              Page 6 of  7

**CONCLUSION**

IT IS HEREBY ORDERED that the Objections (ECF No. 98) and the Motion to Limit

Damages (ECF No. 100) are DENIED.

IT IS SO ORDERED.

Dated this 11ᵗʰ day of March, 2013.

_____

ROBERT C. JONES
United States District Judge